Malcolm MALONE, Plaintiff,

v.

CHAMBERS COUNTY BOARD OF COM-
MISSIONERS Jim Ingram, John Crow-
der, Ross Dunn, Doss D. Leak, David
Eastridge, Wayne White and Sheriff
James Morgan, Sheriff of Chambers
County, Greg Lovelace, Jail Administra-
tor, all sued in their official and individ-
ual capacities. Defendants.

No. CV–94–A–876–E.

United States District Court,
M.D. Alabama,
Eastern Division.

Nov. 7, 1994.

Opinion Denying Reconsideration
Dec. 21, 1994.

Andy D. Birchfield, Jr., Montgomery, AL, for plaintiff.

Mary E. Pilcher, Montgomery, AL, for defendants.

## *MEMORANDUM OPINION AND ORDER*

### I. INTRODUCTION

ALBRITTON, District Judge.

This cause is now before the court on the Motions to Dismiss filed by Sheriff James C. Morgan ("Morgan"), Major Greg Lovelace

1. Ingram, Crowder, Dunn, Leak, Eastridge and White are the duly elected Commissioners of Chambers County. Malone sues each of these defendants in their official and individual capaci-

("Lovelace"), Chambers County Board of Commissioners (the "Board"), Jim Ingram ("Ingram"), John Crowder ("Crowder"), Ross Dunn ("Dunn"), Doss D. Leak ("Leak"), David Eastridge ("Eastridge") and Wayne White ("White") (collectively "Defendants") on August 4, 1994.[1]

On July 11, 1994, Malcolm Malone ("Malone") filed this action against the Defendants, under 42 U.S.C. § 1983 and 42 U.S.C. § 2000e et seq. as amended, alleging that Defendants' termination of his employment violated of his Fourteenth Amendment rights and rights secured by Title VII of the Civil Rights Act of 1964, as amended by the Civil Rights Act of 1991. Specifically, Malone alleges that Defendants discriminated against him on account of his race when they terminated his employment for sleeping on duty and when they did not terminate the employment of white employees who were repeatedly caught sleeping on duty. Malone seeks declaratory and injunctive relief, including reinstatement, and both punitive and compensatory damages. Malone also seeks costs, attorneys' fees and expenses.

The defendants Morgan and Lovelace contend that Malone's complaint should be dismissed for the following reasons: (1) the Eleventh Amendment bars all claims against Morgan and Lovelace in their official capacities; (2) Malone's complaint fails to allege that Morgan either took part in the adverse employment action or established an official policy or custom which caused Malone's termination and so it fails to state a claim against Morgan under 42 U.S.C. § 1983; (3) dismissal is appropriate because to the extent that Malone has sued Morgan and Lovelace in their individual capacities, they are protected by qualified immunity; (4) dismissal is appropriate because Malone's complaint fails to meet the heightened specificity required for Section 1983 complaints and fails to state a claim for which relief can be granted; (5) Malone's Title VII claims against Morgan and Lovelace in their individual capacities are due to be dismissed for failure to state a

ties. The court will refer to these defendants in their individual capacities collectively as the "Commissioners."

claim for which relief can be granted and for failure to bring the claim within the requisite statute of limitations; (6) to the extent Malone seeks recovery under the Civil Rights Act of 1991, his claims should be dismissed because that act is not retroactively applicable to any event occurring before November 21, 1991; and (7) Malone cannot seek punitive damages from Morgan and Lovelace in their official capacities because the Eleventh Amendment and the Alabama Code prohibit punitive damage claims against the State of Alabama.

The Board and the Commissioners contend that Malone's complaint should be dismissed for the following reasons: (1) Malone may not base his Section 1983 claims against the Commissioners upon a respondeat superior theory and so Malone's claims should be dismissed for failure to allege an official policy or custom of Chambers County which lead to the deprivation; (2) Alabama law does not allocate a policy-making role to the Board or the Commissioners which could have lead to their promulgating an official policy or custom regarding employment practices at the Chambers County Jail; (3) qualified immunity protects the Board and the Commissioners in their individual capacities from all of Malone's claims; (4) Malone fails to state a claim against these defendants in their individual capacities for which relief can be granted under Section 1983 and fails to plead with the requisite specificity; (5) Malone fails to state a claim against these defendants in their individual capacities for which relief can be granted under Title VII; (6) Malone's claims against Chambers County are barred by the statute of limitations; (7) Malone fails to state a claim for which relief can be granted under Title VII; and (8) absolute immunity protects county governments from punitive damages under Section 1983.

In response, Malone asserts that his complaint contains sufficient allegations to prove a prima facie case of impermissible race discrimination in violation of Title VII should the facts be found to support his allegations. Malone further contends that his complaint sufficiently states a claim for relief under Section 1983. Moreover, Malone insists that his complaint does not seek to assess liability under Section 1983 on the basis of respondeat superior, rather his complaint is based on conduct of the policy-makers of Chambers County responsible for employment policies. Malone contends that qualified immunity does not protect the Defendants from suit where, as here, their conduct deprived an individual of a clearly-established, federally-protected right. Malone contends that he can sue Defendants in their individual capacities under Title VII. Finally, Malone asserts that the Eleventh Amendment is not a bar to recovery in Title VII suits.

The court concludes that Defendants are correct in some, but not all, of their arguments. The court also finds that Malone is entitled to amend his complaint to correct some of the deficiencies. Accordingly, the court will address each of Defendants' contentions in turn. For the reasons stated below, the court finds that Defendants' Motion to Dismiss is due to be GRANTED in part and DENIED in part.

## II. FACTS

The complaint alleges the following facts:

Malone, a black male, was employed by the Chambers County Board of Commissioners as a jailer for the Chambers County Sheriff's Department. At all times relevant to this case, Sheriff Morgan was the Sheriff of Chambers County. Major Lovelace was the Jail Administrator and as such he was responsible for the employment practices of the Chambers County Jail. Ingram, Crowder, Dunn, Leak, Eastridge, and White were the Commissioners of Chambers County.

On or about August 23, 1992, Malone, who had missed several days of work because he was ill, received a phone call asking him to report to work and fill in for another employee who was absent. Malone advised his employer that he was ill, but after continued urging he agreed to report to work. After Malone had been on duty for some time, Malone asked his supervisor for permission to take a break. The supervisor gave Malone permission for the break due to Malone's illness. Malone went to the nurse's station to rest. Lovelace saw Malone resting and immediately placed Malone on adminis-

trative leave. Lovelace took action which resulted in Malone's termination.

In September 1992, Malone was terminated from his employment with the Chambers County Sheriff's Department. At the time of his termination, Malone was told he had been terminated for sleeping on duty. Prior to Malone's termination he was not disciplined, reprimanded, or counselled in any manner regarding his employment.

Malone alleges that prior to the termination of his employment, white employees were caught sleeping on duty, but were not terminated from their positions by the Defendants. On February 9, 1992, Tony Mason, a white male, was caught sleeping on duty and was not fired. On March 7, 1992, Tony Mason was again caught sleeping on duty and was not fired by Defendants. On April 16, 1992, Defendants again caught Tony Mason sleeping on duty, but they did not terminate his employment. On November 18, 1991, Larry Hudmon, a white male, was caught sleeping on duty on three separate occasions and his employment was not terminated by the Defendants even though he had been observed sleeping on duty on at least three other occasions. Malone alleges that his termination was an intentional act of discrimination against him on account of his race. He alleges that the reason proffered by Defendants for his dismissal is pretextual.

Within one hundred and eighty days of his termination, Malone filed written charges with the Equal Employment Opportunity Commission ("EEOC"). On April 14, 1994, Malone received a Right to Sue Letter from the EEOC.

## III. STANDARD OF REVIEW

A court may dismiss a complaint only if it is clear that no relief could be granted under any set of facts that could be proven consistent with the allegations. *Hishon v. King & Spalding*, 467 U.S. 69, 73, 104 S.Ct. 2229, 2232–2233, 81 L.Ed.2d 59 (1984); *see also Wright v. Newsome*, 795 F.2d 964, 967 (11th Cir.1986) (citation omitted) ("[W]e may not ... [dismiss] unless it appears beyond doubt that the plaintiff can prove no set of facts in support of the claims in the complaint that would entitle him or her to re-

lief."). The court will accept as true all well-pleaded factual allegations and view them in a light most favorable to the non-moving party. *Hishon*, 467 U.S. at 73, 104 S.Ct. at 2232–2233. Moreover, the court is aware that the threshold that a complaint must meet to survive a motion to dismiss for failure to state a claim is "exceedingly low." *Ancata v. Prison Health Services, Inc.*, 769 F.2d 700, 703 (11th Cir.1985) (citation omitted).

## IV. DISCUSSION

### A. ELEVENTH AMENDMENT IMMUNITY

Morgan and Lovelace contend that the Eleventh Amendment bars all claims Malone makes against them in their official capacities. This broad contention requires the court to perform a thorough analysis of Eleventh Amendment immunity.

The Eleventh Amendment provides that

> [t]he judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by citizens of another State, or by citizens or subjects of any foreign state.

U.S. Const. amend. XI. The Eleventh Amendment also proscribes suits by citizens against their own state. *Hans v. Louisiana*, 134 U.S. 1, 10 S.Ct. 504, 33 L.Ed. 842 (1890). It is well established that the states and their agencies are immune from suit for monetary damages. *Edelman v. Jordan*, 415 U.S. 651, 663, 94 S.Ct. 1347, 1355–1356, 39 L.Ed.2d 662 (1974). Additionally, in *Alabama v. Pugh*, 438 U.S. 781, 98 S.Ct. 3057, 57 L.Ed.2d 1114 (1978), the Supreme Court held that actions for injunctive relief against a state or its instrumentalities were not an exception to the Eleventh Amendment bar. In fact, the Supreme Court has explained that the Eleventh Amendment prohibits a federal court from exercising jurisdiction over a lawsuit against a state, except where the state has consented to be sued or waived its immunity, or where Congress has overridden the state's immunity. *See, Pennhurst State Sch. &*

*Hosp. v. Halderman,* 465 U.S. 89, 98–100, 104 S.Ct. 900, 906–908, 79 L.Ed.2d 67 (1984); *Quern v. Jordan,* 440 U.S. 332, 341, 99 S.Ct. 1139, 1145, 59 L.Ed.2d 358 (1979).

In *Fitzpatrick v. Bitzer,* 427 U.S. 445, 96 S.Ct. 2666, 49 L.Ed.2d 614 (1976), the Supreme Court addressed the question of whether the Eleventh Amendment shield of sovereign immunity protected a state and its officials from a suit for damages brought pursuant to Title VII of the Civil Rights Act. *Id.* at 447–448, 96 S.Ct. at 2667–2668. After recognizing the fact that Title VII was passed pursuant to Congress' authority under § 5 of the Fourteenth Amendment, the Court held that "the Eleventh Amendment, and the principle of state sovereignty which it embodies are necessarily limited by the enforcement provisions of § 5 of the Fourteenth Amendment." *Id.* at 456, 96 S.Ct. at 2671. Thus, the Eleventh Amendment is not a bar to Malone's claims under Title VII. To the extent that Morgan and Lovelace base their Motion to Dismiss on Eleventh Amendment immunity from Title VII claims it is due to be DENIED.

Although the Eleventh Amendment provides a bar to some kinds of claims under Section 1983, the Eleventh Amendment is not a complete bar. The Eleventh Amendment does not insulate state officials acting in their official capacities from suit for prospective injunctive relief to remedy violations of federal constitutional law. *See, Edelman,* 415 U.S. at 664–671, 94 S.Ct. at 1356–1360; *Scheuer v. Rhodes,* 416 U.S. 232, 237–38, 94 S.Ct. 1683, 1686–87, 40 L.Ed.2d 90 (1974); *Ex parte Young,* 209 U.S. 123, 159–60, 28 S.Ct. 441, 453–54, 52 L.Ed. 714 (1908). In such cases, it is the individual and not the state which is being sued, and when a state official acts unconstitutionally, he is stripped of his official or representative character and Eleventh Amendment protection. *Ex parte Young,* 209 U.S. at 159–160, 28 S.Ct. at 453–454. Moreover, the Eleventh Amendment does not bar monetary relief, including costs, which is ancillary to the prospective injunctive relief. *Kentucky v. Graham,* 473 U.S.

159, 169 n. 18, 105 S.Ct. 3099, 3107 n. 18, 87 L.Ed.2d 114 (1985).

However, in cases where the state official is only a nominal defendant in a suit for damages, and the state is the true defendant because the plaintiff is "seeking to impose a liability which must be paid from public funds in the state treasury," the Eleventh Amendment remains as a bar. *Edelman,* 415 U.S. at 663, 94 S.Ct. at 1355–1356. This rule applies whether the plaintiff brings an action for damages against a state, a state agency or instrumentality, or a state official. *Id.* Thus, the Eleventh Amendment bars suits for damages against state officials acting in their official capacity when the state is the real party in interest. *Pennhurst,* 465 U.S. at 101, 104 S.Ct. at 908.

A court faced with a claim of Eleventh Amendment immunity must first determine whether the plaintiff is suing the state. This often involves deciding whether the entity raising the defense can be considered an "agency or instrumentality" of the state. State law guides this determination. *Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle,* 429 U.S. 274, 280, 97 S.Ct. 568, 572–573, 50 L.Ed.2d 471 (1977); *Sessions v. Rusk State Hosp.,* 648 F.2d 1066, 1069 (5th Cir. Unit A June 1981).[2] The Supreme Court of Alabama held that a county sheriff is an executive officer of the state of Alabama. *Parker v. Amerson,* 519 So.2d 442, 442–43 (Ala.1987). Consequently, sheriffs enjoy the protection of the Eleventh Amendment when they are sued in their official capacities for damages under Section 1983. *See, e.g., Carr v. City of Florence, Ala.,* 916 F.2d 1521, 1525 (11th Cir.1990); *Parker v. Williams,* 862 F.2d 1471, 1475–76 (11th Cir.1989). Similarly, this Eleventh Amendment immunity extends to deputy sheriffs. *Carr,* 916 F.2d at 1527. Thus, Malone's suit for damages under Section 1983 from Morgan and Lovelace in their official capacities is a suit against the State of Alabama and as such it is barred by the Eleventh Amendment.

In light of the foregoing authority, the court finds that Malone's Section 1983

---

**2.** Decisions of the Fifth Circuit prior to October 1, 1981 are binding in the Eleventh Circuit.

*Bonner v. City of Prichard, Ala.,* 661 F.2d 1206, 1210 (11th Cir.1981).

claims for prospective injunctive relief survive the motion to dismiss filed by Morgan and Lovelace. The court further finds that Malone's Section 1983 claims for damages from Morgan and Lovelace in their official capacities are barred by the Eleventh Amendment. Thus, to the extent that Morgan and Lovelace base their motion to dismiss on a claim of Eleventh Amendment immunity from damages under Section 1983 in their official capacities it is due to be GRANTED.

## B. PUNITIVE DAMAGES

### 1. Morgan and Lovelace

Morgan and Lovelace contend that to the extent Malone has sued them in their official capacities, they are absolutely immune from punitive damages. Their argument is based on a provision of the Code of Alabama[3] and the Eleventh Amendment. They argue that any suit against them in their official capacities is really a suit against the State of Alabama. In effect this argument revisits the applicability of the Eleventh Amendment to this suit. In light of the court's finding that the Eleventh Amendment protects Morgan and Lovelace from Malone's damages claims against them in their official capacities, the court need not address the other arguments made by Morgan and Lovelace in support of immunity.

### 2. The Board and the Commissioners

■ The Commissioners contend that to the extent that they are sued in their official capacities, they are immune from Malone's punitive damage claim under Section 1983. The Commissioners argue that such a suit against them in their official capacities is really a suit against Chambers County. The Commissioners assert that the Code of Alabama Section 6–11–26 provides that claims for punitive damages cannot be brought against a county. The Commissioners also

rely on *Healy v. Town of Pembroke Park*, 831 F.2d 989 (11th Cir.1987). *Healy* recognizes that while punitive and compensatory damages are generally available to a plaintiff bringing suit under Section 1983, punitive damages are not available under Section 1983 where the defendant is a town. *Id.* at 991.

In *City of Newport v. Fact Concerts, Inc.*, 453 U.S. 247, 101 S.Ct. 2748, 69 L.Ed.2d 616 (1981), the Supreme Court held that municipalities are immune from punitive damages in § 1983 suits. *Id.* at 271, 101 S.Ct. at 2762. In reaching that conclusion, the court focused on the purpose of such awards; retribution and deterrence. *Id.* at 266–70, 101 S.Ct. at 2759–61. According to the Court, permitting punitive awards to be assessed against a local government would not punish the actual wrongdoer, since innocent taxpayers would ultimately bear the financial burden. *Id.* at 267, 101 S.Ct. at 2759–2760. Additionally, the Court noted that the deterrence rationale largely fails in this context, because to be effective, deterrence should be aimed at the individual actors responsible for the constitutional violation, rather than against a governmental entity which must pass the cost on to the citizenry. *Id.* at 270, 101 S.Ct. at 2761. Similarly, this rationale justifies extending the holding of *Fact Concerts* to cases brought against local government bodies such as counties. *Harrelson v. Elmore County, Ala.,* 859 F.Supp. 1465 (M.D.Ala.1994). *See also, Davis v. Mason County,* 927 F.2d 1473, 1485 n. 6 (9th Cir.1991) (citations omitted); *Hammond v. County of Madera,* 859 F.2d 797, 803 n. 2 (9th Cir.1988); *Erwin v. County of Manitowoc,* 872 F.2d 1292, 1299 (7th Cir. 1989) (dicta); *Greiner v. County of Greene,* 811 F.Supp. 796, 801 (N.D.N.Y.1993); *Falk v. County of Suffolk,* 781 F.Supp. 146, 152 (E.D.N.Y.1991); *Jensen v. Conrad,* 570 F.Supp. 91, 99 (D.S.C.1983), *aff'd* 747 F.2d 185 (4th Cir.1984), *cert. denied,* 470 U.S. 1052, 105 S.Ct. 1754, 84 L.Ed.2d 818 (1985).[4]

---

3. Morgan and Lovelace rely upon the following provision of the Code of Alabama

Punitive damages may not be awarded against the State of Alabama or any county or municipality thereof, or any agency thereof, except any entity covered under the Medical Liability Act now codified as Section 6–5–480 et seq., or any acts amendatory thereto.

Ala.Code § 6–11–26 (1975).

4. To date, the Eleventh Circuit has not addressed this issue. The court, however, finds that the opinions of the Seventh and Ninth Circuits, as well as the various district courts, are well reasoned and believes that the Eleventh Circuit would adopt them.

Accordingly, the court finds that the motion of the Board and the Commissioners to dismiss Malone's request for punitive damages under his Section 1983 claims against them in their official capacities is due to be GRANTED.

## C. MALONE'S TITLE VII CLAIMS

Morgan and Lovelace raise several issues which they contend indicate that Malone's Title VII claims are due to be dismissed: statute of limitations, outside the scope of a reasonable investigation, Civil Rights Act of 1991 not retroactively applicable, failure to plead intent to discriminate, and lack of individual liability for Title VII violations. The Board and the commissioners contend that dismissal of Malone's Title VII claims is appropriate for the following reasons: statute of limitations, failure to meet condition precedent (filing of EEOC charge more than 180 days after claim arose), Malone's claims exceed the scope of a reasonable investigation, failure of the Board to meet the definition of an employer for purposes of Title VII, and failure of Malone to plead an intent to discriminate and participation in the alleged discrimination on the part of Board and Commissioners. The court will separately address each contention.

### 1. Prima Facie Case

■ A Title VII plaintiff who wishes to bring claims for disparate treatment can bring a suit based on either direct or circumstantial evidence. *See EEOC v. Alton Packaging Corp.*, 901 F.2d 920, 923 (11th Cir. 1990). Because direct evidence of discrimination is difficult to produce, the courts use a three-part procedure to analyze circumstantial evidence of discrimination.

The *McDonnell Douglas* analysis is intended to sharpen inquiry into the elusive factual question of intentional discrimination where the plaintiff's case is made out with **circumstantial** evidence supporting the **inference** of discrimination.

*Lee v. Russell County Board of Education,* 684 F.2d 769, 773–74 (11th Cir.1982) (emphasis in original).

■ In such a case, the plaintiff must first prove by a preponderance of the evidence a prima facie case of discrimination. *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 802, 93 S.Ct. 1817, 1824, 36 L.Ed.2d 668 (1973); *Texas Dep't of Comm. Affairs v. Burdine,* 450 U.S. 248, 253, 101 S.Ct. 1089, 1093–94, 67 L.Ed.2d 207 (1981). This may be done by showing that (i) he is a member of a protected class; (ii) he applied for and was qualified for the position; (iii) despite his qualifications, he was rejected for the position; and (iv) a person not a member of the protected class with equal or lesser qualifications received the position or the position remained open. *McDonnell Douglas,* 411 U.S. at 802, 93 S.Ct. at 1824; *Burdine,* 450 U.S. at 253, 101 S.Ct. at 1093–94. Courts dealing with cases alleging discriminatory demotion or discharge modify the prima facie case so that it applies to those types of employment actions as well as to failure to hire. *Lee,* 684 F.2d at 773. The modified prima facie case requires a showing that plaintiff, a member of a protected class, was demoted or discharged from a position for which he was qualified and that others outside the class were not so treated or that the plaintiff was replaced by someone not in the protected class. *Id. Accord, Weaver v. Casa Gallardo, Inc.,* 922 F.2d 1515, 1525 (11th Cir.1991). Proof of the prima facie case creates a presumption, or a required conclusion in the absence of explanation, "that the employer unlawfully discriminated against the employee." *St. Mary's Honor Ctr. v. Hicks,* —— U.S. ——, ——, 113 S.Ct. 2742, 2747, 125 L.Ed.2d 407 (1993).

### 2. Suits Against the Defendants in Their Official Capacities

■ As the Eleventh Circuit has explained, the relief granted under Title VII is against the employer and not against the individuals whose actions constitute a violation. *Busby v. City of Orlando,* 931 F.2d 764, 772 (11th Cir.1991). Moreover, a plaintiff seeking recovery under Title VII may sue his employer "either by naming the supervisory employees as agents of the employer or by naming the employer directly." *Id.* Claims against supervisory employees under Title VII are properly considered as made against the city or appropriate municipal body. *Id.* Thus, Malone's Title VII claim

may be considered a suit against the municipal entity which was his former employer, because he has sued his former supervisors in their official capacities.

### 3. Suits Against Defendants in Their Individual Capacities

■ Morgan, Lovelace, and the Commissioners contend that Malone's complaint inappropriately claims against them in their individual capacities and must for that reason, fail. Malone asserts that these defendants are liable in their individual capacities under Title VII. Specifically, Malone argues that the facts of this case support a holding that the individuals should be held liable because the denial of individual liability amounts to a denial of punitive damages because the employing entity is immune from such damages.

The Eleventh Circuit has held that Title VII suits may not be brought against government officials in their individual capacities. *See, e.g., Yeldell v. Cooper Green Hosp., Inc.,* 956 F.2d 1056, 1060 (11th Cir.1992) ("Title VII actions are not appropriately brought against government officials in their personal capacities. Such suits may be brought only against individuals in their official capacity and/or the employing entity."); *Busby v. City of Orlando,* 931 F.2d 764, 772 (11th Cir.1991) (per curiam) ("Individual capacity suits under Title VII are similarly inappropriate. The relief granted under Title VII is against the **employer,** not individual employees whose actions would constitute a violation of the Act."); *Roberts v. Houston County Bd. of Educ.,* 819 F.Supp. 1019, 1029 (M.D.Ala.1993) (school superintendent could not be sued in his individual capacity under Title VII.).

Malone contends that, in light of the Civil Rights Act of 1991, these cases are no longer good law. Malone supports his argument by pointing to *Wilson v. Gillis Advertising Co.,* No. 92–AR–2126–S, 1993 WL 503117 (N.D.Ala. Jan. 8, 1993). *Wilson* allowed a plaintiff in a Title VII suit against the company which employed her to amend her complaint to add claims against the company president and plaintiff's supervisor in their individual capacities. *Wilson,* 1993 WL 503117 at *3. The *Wilson* court acknowl-

edged that the Eleventh Circuit has held that individual capacity suits are inappropriate under Title VII, but it distinguished that Eleventh Circuit precedent by pointing out that those cases had involved the public employment context. *Id.* at *1. The *Wilson* court also made much of the fact that the Eleventh Circuit cases which reached the no individual liability holding pre-date the 1991 amendments of Title VII. *Id.* at *2. The *Wilson* court predicted that the Eleventh Circuit would someday agree with its conclusion that the Civil Rights Act of 1991 provides for individual capacity suits against the agents of the employing entity. *Id.*

Relying on *Smith v. Capitol City Club of Montgomery,* 850 F.Supp. 976 (M.D.Ala. 1994), Malone further contends that the circumstances of this case support an exception to the rule against individual liability. In *Smith,* the court ruled on a motion to dismiss filed by plaintiff's former manager on the basis that he could not be individually liable under Title VII. *Smith,* 850 F.Supp. at 977. The plaintiff argued that the passage of the Civil Rights Act of 1991 invalidated prior Eleventh Circuit authority which held that individual capacity suits were inappropriate under Title VII. *Id.* at 978. Relying on guidance from a Ninth Circuit opinion, the *Smith* court disagreed with *Wilson* and predicted that when the Eleventh Circuit reaches this issue it will hold that the rule in the Eleventh Circuit prohibiting individual liability under Title VII remains good law notwithstanding the availability of damages that an individual defendant can provide. *Id.* at 979. After carefully considering the changes wrought by the Civil Rights Act of 1991 and the policy arguments for and against individual liability under Title VII, the court held that "the 1991 amendments to Title VII do not authorize this court to hold an individual liable for [punitive and compensatory] damages." *Id.* at 980–81. As a final note, the court discussed two situations in which a denial of individual liability might make a practical difference and prevent a plaintiff from recovering: when an employer is bankrupt and when a plaintiff needs to pierce the corporate veil to reach the assets of individual owners, directors, or officers. *Id.* at 981.

The court declined to proffer an opinion on "whether and when an exception to the rule against individual liability should exist." *Id.*

Malone asserts that this case presents the court with the opportunity to create an important exception to the rule against individual liability. Malone contends that where, as here, the employing entity is immune from punitive damages, individual liability under Title VII promotes the purposes on Title VII and the 1991 amendments. Malone does not provide one example of a court creating such an exception for these or any other reasons. Because the court agrees with the analysis in the *Smith* case and thinks it unlikely that the Eleventh Circuit will do away with its prohibition on individual liability under Title VII, the court declines Malone's invitation to create an exception to this general rule for these types of cases or ignore the Eleventh Circuit's previous holdings on the subject. To the extent that Morgan, Lovelace, and the Commissioners seek a dismissal of Malone's claims against them in their individual capacities under Title VII, their motions to dismiss are due to be GRANTED.

### 4. Employer as Defined by Title VII

[30, 31] Title VII defines employer as a

person engaged in an industry affecting commerce who has fifteen or more employees for each working day in each of twenty or more calendar weeks in the current or preceding calendar year, and any agent of such person ...

42 U.S.C. § 2000e(b). For purposes of this statute, "person" includes individuals, governments, and governmental agencies. *See,* 42 U.S.C. § 2000e(a). The definition of employer under Title VII is to be construed liberally. *See, Williams v. City of Montgomery,* 742 F.2d 586, 588 (11th Cir.1984) (citation omitted). Malone alleges that he was employed by the Board and that the Board employs more than fifteen people. The court cannot say that Malone has failed to allege that the Board was his employer within the meaning of Title VII. Nor can the court determine that the Board was not Malone's employer within the meaning of Title VII on the basis of the authority to which the Board points without more factual information than is presently before the court. Thus, to the extent that the Board seeks dismissal of Malone's Title VII claims on this basis, its motion is due to be DENIED.

### 5. Title VII Timing Requirements

▇▇▇ Defendants raise the Title VII statute of limitations as a bar to Malone's Title VII claims. Title VII does state that a

charge under this section shall be filed within one hundred and eighty days after the alleged unlawful employment practice occurred and notice of the charge (including the date, place and circumstances of the alleged unlawful employment practice) shall be served upon the person against whom such charge is made within ten days thereafter ...

42 U.S.C. § 2000e–5(e). Thus "Title VII requires persons claiming discrimination to file a complaint with the Equal Employment Opportunity Commission ("EEOC") within 180 days after the allegedly discriminatory practice occurs." *Yates v. Mobile County Personnel Bd.,* 658 F.2d 298, 299 (5th Cir. Unit B Oct. 1981). Malone alleges he filed a charge with the EEOC within one hundred and eighty days of his dismissal. Thus, the court finds that the statute of limitations does not bar his Title VII claims. To the extent Defendants claim that Malone's complaint should be dismissed for failure to comply with the applicable statute of limitations their motions to dismiss is due to be DENIED.

▇▇▇ The Commissioners base their motion to dismiss Malone's complaint on a contention that Malone did not comply with another timing requirement under Title VII. Title VII requires plaintiffs seeking to bring civil actions under Title VII to file such suits within ninety days of receiving notice of their right to sue from the EEOC. *See* 42 U.S.C. § 2000e–5(f)(1). Malone alleges that he received his right to sue letter from the EEOC on April 14, 1994. Malone filed his complaint on July 11, 1994. The court finds that Malone's allegations support a finding that he complied with the timing requirement of Title VII. To the extent that Defendants base their motions to dismiss Malone's Title VII claims on a theory that Malone did not timely file, the motions are due to be DENIED.

### 6. Applicability of Civil Rights Act of 1991

 The Civil Rights Act of 1991 adds compensatory and punitive damages to the list of remedies that Title VII plaintiffs may seek. *Curtis v. Metro Ambulance Serv., Inc.,* 982 F.2d 472, 473 (11th Cir.1993). It also provides that Title VII plaintiffs who request compensatory or punitive damages may try their case to a jury. *Id.* These provisions of the 1991 Act are not retroactively applicable. *See, e.g., Batey v. Stone,* 24 F.3d 1330, 1336 (11th Cir.1994) (Civil Rights Act of 1991 does not apply retroactively to a case in which plaintiff filed a charge with the EEOC prior to the effective date of the Act.); *Curtis,* 982 F.2d at 473–74 (Civil Rights Act of 1991 was not retroactively applicable to a case which was filed before the enactment of the Act even though the case had not yet been tried.)

 Morgan and Lovelace seek the dismissal of Malone's Title VII claims to the extent that they are based on the amendments contained in the Civil Rights Act of 1991. Morgan and Lovelace correctly assert that the Act is not retroactively applicable. However, their contention that Malone's complaint requires a retroactive application is without merit. Malone alleges that his employment was terminated in a manner that violates Title VII in 1992. Malone alleges that he filed a charge with the EEOC in 1992. Malone filed his complaint in 1994. The effective date of the Civil Rights Act of 1991 was November 21, 1991. Malone's allegations, which must be taken as true, do not support a conclusion that the events giving rise to this cause of action occurred prior to the enactment of the Civil Rights Act of 1991. Thus, to the extent that Morgan and Lovelace seek dismissal of the portions of Malone's complaint based on the Civil Rights Act of 1991, their motion is due to be DENIED.

### 7. Qualified Immunity and Title VII

 The Commissioners claim that Malone's complaint is due to be dismissed to the extent that it seeks relief from them because of actions taken in their individual capacities which are protected by qualified immunity.

Similarly, Morgan and Lovelace assert that they are immunized from all of Malone's federal claims by the doctrine of qualified immunity. Qualified immunity does not offer Defendants an affirmative defense to Malone's claims under Title VII. *See Busby v. City of Orlando,* 931 F.2d 764, 772 (11th Cir.1991). Therefore, to the extent that the Defendants seek a dismissal of Malone's Title VII claims on qualified immunity grounds, their motions to dismiss are due to be DENIED.

### D. MALONE'S SECTION 1983 CLAIMS

#### 1. Prima Facie Case

 Malone brings suit, in part, pursuant to 42 U.S.C. § 1983. Section 1983 creates a private right of action for damages and injunctive relief against individuals and governmental bodies whose conduct under the color of state or local law deprives a plaintiff of rights, privileges or immunities "secured by the Constitution or laws." 42 U.S.C. § 1983. To state a claim under 42 U.S.C. § 1983, "a plaintiff must allege facts showing that the defendant's act or omission, done under the color of state law, deprived him of a right, privilege, or immunity protected by the Constitution or the laws of the United States." *Emory v. Peeler,* 756 F.2d 1547, 1554 (11th Cir.1985) (citation omitted). Thus, Section 1983 is not a source of rights, rather it is a means of vindicating federal rights. *Albright v. Oliver,* —— U.S. ——, ——, 114 S.Ct. 807, 811, 127 L.Ed.2d 114 (1994).

[40–43] When a court begins to analyze a Section 1983 claim, it must first "identify the specific constitutional right allegedly infringed." *Id.* Whether a constitutional violation has occurred can only be determined by applying the standards applicable to that particular constitutional provision. *See Graham v. Connor,* 490 U.S. 386, 394, 109 S.Ct. 1865, 1870–1871, 104 L.Ed.2d 443 (1989). Malone alleges that the termination of his employment violated his Fourteenth Amendment rights. The equal protection clause of the Fourteenth Amendment affords Malone a right to be free from racial discrimination. *See, e.g., Washington v. Davis,* 426 U.S. 229,

239–241, 96 S.Ct. 2040, 2047–2048, 48 L.Ed.2d 597 (1976). In the Eleventh Circuit, Section 1983 actions challenging racial discrimination under the equal protection clause and Title VII disparate treatment cases both require a showing of discriminatory motive, and the nature of the prima facie case is the same in either case: 'A *McDonnell Douglas* prima facie showing is not the equivalent of a factual finding of discrimination ... Rather it is simply proof of actions taken by the employer from which we infer discriminatory animus because experience has proved that in the absence of any other explanation it is more likely than not that those actions were bottomed on impermissible considerations.' *Lee v. Conecuh County Bd. of Educ.*, 634 F.2d 959, 962 (5th Cir. Jan. 1981) (quoting *Furnco Constr. Corp. v. Waters*, 438 U.S. 567, 579–80, 98 S.Ct. 2943, 2950–51, 57 L.Ed.2d 957 (1978)).

 With the right allegedly infringed identified, the court turns its attention to the person or entity charged with the deprivation. The Supreme Court has interpreted Section 1983 as requiring proof that the defendant caused a constitutional deprivation under color of state law by "[m]isuse of power, possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law." *Monroe v. Pape*, 365 U.S. 167, 184–87, 81 S.Ct. 473, 482–84, 5 L.Ed.2d 492 (1960). An employee of the state acts under color of state law "while acting in his official capacity or while exercising his responsibilities pursuant to state law." *West v. Atkins*, 487 U.S. 42, 50, 108 S.Ct. 2250, 2255, 101 L.Ed.2d 40 (1988) (holding a doctor employed by the state of North Carolina to provide medical care in state prisons was liable under Section 1983 for his acts while working in prison hospital as a doctor.) It is the nature of the act performed by the State official, not the official's status, that determines whether the act is under color of State law. *See, e.g., Morgan v. Tice*, 862 F.2d 1495, 1499 (11th Cir.1989) (where nothing in the record indicated that the defendant, who happened to be a town manager, was clothed with the power of the town when he made allegedly

defamatory statements about the plaintiff there was no action under color of law); *Delcambre v. Delcambre*, 635 F.2d 407, 408 (5th Cir. Unit A 1981) (sheriff did not act under color of law when he assaulted his sister-in-law at the police station while he was on duty because the assault arose out of a family argument and because sheriff never arrested or threatened to arrest his sister-in-law).

 While local government bodies such as counties and municipalities are persons within the meaning of Section 1983 and can be held accountable for deprivations of federally protected rights, it is not a respondeat superior theory on which liability rests. *Oklahoma City v. Tuttle*, 471 U.S. 808, 817–18, 105 S.Ct. 2427, 2433, 85 L.Ed.2d 791 (1985).

> Local governments are directly liable under § 1983 ... for constitutional deprivations resulting from (1) an unconstitutional action taken pursuant to an officially promulgated policy statement, decision, regulation or ordinance; or (2) governmental custom, even though not authorized by written law.

*Martinez v. City of Opa–Locka, Fla.*, 971 F.2d 708, 713 (11th Cir.1992) (citing *Monnell v. Department of Social Services*, 436 U.S. 658, 690–691, 98 S.Ct. 2018, 2035–2036, 56 L.Ed.2d 611 (1978)). Such a governmental entity can be held liable for the acts of its employees only if Malone can establish that his injuries were caused by actions taken by Lovelace pursuant to an official policy or custom of that entity. *City of Canton, Ohio v. Harris*, 489 U.S. 378, 389–92, 109 S.Ct. 1197, 1205–07, 103 L.Ed.2d 412 (1989). Put another way, to hold the governmental entity liable for the alleged constitutional deprivations by its employees, Malone must establish that an official policy or custom of the governmental entity which employed him was the moving force behind the deprivations. *Farred v. Hicks*, 915 F.2d 1530, 1532–33 (11th Cir.1990).

### 2. Qualified Immunity & Section 1983

Morgan, Lovelace, and the Commissioners contend that they are entitled to qualified immunity from all Malone's claims against

them for actions they took in their individual capacities.

Qualified immunity may be claimed by an individual defendant who is being sued personally for actions that he or she took while acting under color of state law. *Harlow v. Fitzgerald,* 457 U.S. 800, 815, 102 S.Ct. 2727, 2736–2737, 73 L.Ed.2d 396 (1982). Qualified immunity is a question of law to be decided by the court prior to trial. It is designed to allow officials who are entitled to qualified immunity to avoid the expense and disruption of going to trial, and is not merely a defense to liability. *Ansley v. Heinrich,* 925 F.2d 1339, 1345 (11th Cir. 1991).

The Supreme Court has referred to the qualified immunity analysis as the "objective-reasonableness" test. *Harlow,* 457 U.S. at 815–19, 102 S.Ct. at 2736–39. Under this test, public officials performing discretionary functions which would objectively appear to be within the official's authority have qualified immunity if their challenged conduct did not violate a clearly established constitutional right of which a reasonable person would have known, given the circumstances and information possessed by the official at the time of the conduct. *Id.* at 818, 102 S.Ct. at 2738.

The objective-reasonableness test is a two part analysis. First, the defendant public official must prove that he was performing duties within the scope of his discretionary authority when the alleged violation occurred. *Hutton v. Strickland,* 919 F.2d 1531, 1537 (11th Cir.1990) (citations omitted). A government official may prove that he was acting within the scope of his authority by showing facts and circumstances that would indicate that his actions were part of his normal job duties and were taken in accordance with those duties. *Rich v. Dollar,* 841 F.2d 1558, 1564 (11th Cir.1988); *Cronen v. Texas Dep't of Human Services,* 977 F.2d 934, 939 (5th Cir.1992) ("An official acts within his discretionary authority when he performs non-ministerial acts within the boundaries of his official capacity.").

Once the defendant proves that he was acting within his discretionary authority, the burden then shifts to the plaintiff to prove that the defendant did not act in good faith. *Hutton,* 919 F.2d at 1537. The plaintiff may meet this burden by establishing that "the defendant public official's actions 'violated clearly established constitutional law.'" *Id.* (citations omitted). The second prong of the objective-reasonableness test has two sub-parts. *Id.* at 1538. First, the court must find that the constitutional law in question was clearly established when the alleged violation occurred. *Id.* Second, the court must find that "there is a genuine issue of fact regarding the government official's engaging in conduct violative of the clearly established law." *Id.*

"Clearly established" means that "[t]he contours of the [violated] right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Anderson v. Creighton,* 483 U.S. 635, 640, 107 S.Ct. 3034, 3039, 97 L.Ed.2d 523 (1987).

> This is not to say that an official action is protected by qualified immunity unless the very action in question has previously been held unlawful, but it is to say that in light of the preexisting law the unlawfulness must be apparent.

*Id.* (citations omitted). Under this standard, qualified immunity is available to protect "all but the plainly incompetent or those who knowingly violate the law." *Malley v. Briggs,* 475 U.S. 335, 341, 106 S.Ct. 1092, 1096, 89 L.Ed.2d 271 (1986).

To defeat a qualified immunity defense, the plaintiff bears the burden of showing that the "legal norms allegedly violated by the defendant were clearly established at the time of the challenged actions or, ... the law clearly proscribed the actions the defendant took." *Barts v. Joyner,* 865 F.2d 1187, 1190 (11th Cir.1989), *cert. denied,* 493 U.S. 831, 110 S.Ct. 101, 107 L.Ed.2d 65 (1989) (*quoting Mitchell v. Forsyth,* 472 U.S. 511, 528, 105 S.Ct. 2806, 2816, 86 L.Ed.2d 411 (1985)). In determining whether the plaintiff meets this burden, the court is guided by the Eleventh Circuit's direction in *Nicholson v. Georgia Dep't of Human Resources,* 918 F.2d 145 (11th Cir.1990):

In satisfying this burden, the plaintiff cannot point to sweeping propositions of law and simply posit that those propositions are applicable. Instead, the plaintiff must draw the court's attention toward a more particularized and fact-specific inquiry. Under this inquiry, the plaintiff need not point to one or more cases that resolved the precise factual issues at issue in his or her case. '[A]lthough the standard is fact-specific, it is not one of factual rigidity.' Rather, the plaintiff need only show that there existed sufficient case law establishing the contours of his or her constitutional rights such that the unlawfulness of the defendant's conduct would have been apparent to a reasonable official in the same circumstances and possessing the same knowledge as the defendant.

*Id.* at 147 (citations omitted).

■ If the plaintiffs satisfy their initial burden and show that the rights that defendants' conduct allegedly violated were clearly established at the time of defendants' conduct, the court must then determine whether the plaintiffs have adduced evidence sufficient to create a genuine issue of fact as to whether defendants actually engaged in conduct that violated clearly established law. *Rich,* 841 F.2d at 1564. *See also Stewart v. Baldwin County Bd. of Educ.,* 908 F.2d 1499, 1503 (11th Cir.1990). In this undertaking, the court must draw all inferences of fact in favor of the plaintiff when the plaintiff is the party opposing the motion. *Stewart,* 908 F.2d at 1503.

Thus, the court must determine whether Defendants acted in a way that was clearly unconstitutional. In other words, the court must here decide if Malone's complaint sufficiently alleges facts which if true could establish that Defendants violated clearly established law by terminating Malone's employment when they had not terminated white employees for similar conduct.

### 3. "Heightened Specificity" Pleading

■ Generally, pleading is governed by Rule 8 of the Federal Rules of Civil Procedure which only requires a "short and plain statement of the claim that will give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it

rests." *See Conley v. Gibson,* 355 U.S. 41, 47, 78 S.Ct. 99, 103, 2 L.Ed.2d 80 (1957). This is the "notice pleading" standard utilized in federal courts. *Id.*

■ In an effort to eliminate non-meritorious claims on the pleadings and to protect public officials from protracted litigation involving specious claims, the Eleventh Circuit, as well as others, has held that a plaintiff must meet a "heightened pleading" standard to survive a motion to dismiss claims under Section 1983. *Oladeinde v. City of Birmingham, Ala.,* 963 F.2d 1481, 1485 (11th Cir. 1992), *cert. denied, sub nom. Deutcsh v. Oladeinde,* — U.S. —, 113 S.Ct. 1586, 123 L.Ed.2d 153 (1993); *Arnold v. Bd. of Educ.,* 880 F.2d 305, 309 (11th Cir.1989); *Fullman v. Graddick,* 739 F.2d 553, 556–57 (11th Cir. 1984). However, the court recognizes that the Supreme Court has recently held that a heightened pleading requirement may not be imposed in § 1983 cases involving claims against municipalities. *Leatherman v. Tarrant County Narcotics Intelligence and Coordination Unit,* — U.S. —, —, 113 S.Ct. 1160, 1163, 122 L.Ed.2d 517 (1993). The court notes that *Leatherman* calls into question the validity of imposing a heightened pleading standard in any § 1983 case. However, absent further direction from the Supreme Court or the Eleventh Circuit, the court will apply the heightened standard where appropriate under current Eleventh Circuit law. Thus, Malone's claims against the municipal entity are not subject to the heightened pleading requirement and must only meet the standard set out in Rule 8 of the Federal Rules of Civil Procedure. The court finds that the allegations in Malone's complaint, specifically paragraph 23, comport with the requirements of Rule 8 of the Federal Rules of Civil Procedure.

■ However, to the extent that some of Malone's claims are not brought against a municipality, the court finds the application of the heightened pleading standard appropriate. That is, the plaintiff must provide a greater degree of factual specificity than is ordinarily necessary under the notice pleading approach of the Federal Rules of Civil Procedure. *Hunter v. District of Columbia,*

943 F.2d 69, 75 (D.C.Cir.1991) (citation omitted). Under this heightened pleading standard, actions against governmental officials must be pleaded:

with sufficient precision to put defendants on notice of the nature of the claim and enable them to prepare a response and, where appropriate, a summary judgment motion on qualified immunity grounds.

*Brown v. Frey*, 889 F.2d 159, 170 (8th Cir. 1989), *cert. denied*, 493 U.S. 1088, 110 S.Ct. 1156, 107 L.Ed.2d 1059 (1990) (citations omitted) (internal quotation marks omitted). Nevertheless, the heightened standard requires "no more than that the plaintiff tell his story, relating the pertinent information that is already in his possession." *Hunter*, 943 F.2d at 76 (*citing Siegert v. Gilley*, 500 U.S. 226, 2, 111 S.Ct 1789, 1800–01, 114 L.Ed.2d 277 (1991) (Marshall, J., dissenting)).

 However, the heightened standard cannot be interpreted to require a plaintiff to plead information that is outside his control. *Id.* The court is also mindful that " 'fundamental rights and important questions of public policy are involved in actions under the various civil rights statutes and [a court] should not dismiss the complaint unless it is frivolous or fails to state a claim for relief.' " *Arnold*, 880 F.2d at 310 n. 2. (citation omitted).

 In light of the foregoing authority, the court finds that Malone has failed to adequately allege with requisite specificity the facts which amount to a violation of his Fourteenth Amendment rights by the individual defendants. This lack of specificity makes it impossible for the court to determine whether he states a claim for which relief can be granted under Section 1983 and whether qualified immunity protects Defendants from this suit. Specifically, Malone fails to plead with requisite specificity how each of the named Defendants acted under color of state law to deprive Malone of his rights under the Fourteenth Amendment. In the alternative, Malone fails to contend that such information is outside of his control. However, the court finds that Malone is entitled to amend his complaint to correct these deficiencies.

The court finds that paragraphs 6 and 22 of Malone's complaint contain allegations that Malone is a member of a protected class and that his discharge was the result of an impermissibly discriminatory motive. Thus, the court finds no merit in Defendants' claims that Malone has not alleged that he is a member of a suspect class and that he was subjected to intentional discrimination. The deficiencies in the Section 1983 allegations of Malone's complaint relate to facts which establish that each individual defendant, in their individual capacities, acted in a way that deprived Malone of his rights and that they acted under color of state law. For example, the complaint does not make clear who told Malone that his employment was going to be terminated or who made that decision acting with discriminatory intent.

## V. CONCLUSIONS

For the foregoing reasons, it is hereby the ORDER of the court that Defendants' Motion to Dismiss is due to be GRANTED in part and DENIED in part. To the extent that

(1) Morgan and Lovelace contend that Malone's complaint should be dismissed because the Eleventh Amendment bars Malone's claims under Title VII, their motion is DENIED.

(2) Morgan and Lovelace contend that Malone's complaint should be dismissed because the Eleventh Amendment bars Malone's claims under Section 1983 against them in their official capacities, their motion is DENIED as to Malone's claims for prospective injunctive relief from Morgan and Lovelace and GRANTED as to Malone's claims for damages other than those which are incidental to the prospective injunctive relief.

(3) Morgan and Lovelace contend that Malone's complaint should be dismissed because the Eleventh Amendment bars Malone's claims against them in their official capacities for punitive damages, their motion is GRANTED and Malone's claims for punitive damages against Morgan and Lovelace are hereby STRICKEN.

(4) the Board and the Commissioners contend that Malone's claims under Section 1983

for punitive damages should be dismissed, their motion is GRANTED and Malone's claims for punitive damages against the Board and the Commissioners in their official capacities are hereby STRICKEN.

(5) Defendants contend that Malone's complaint fails to state a claim for Title VII relief, their motion is DENIED.

(6) Morgan, Lovelace, and the Commissioners seek a dismissal of Malone's claims against them in their individual capacities under Title VII, their motions to dismiss are GRANTED and Malone's claims against the Defendants in their individual capacities under Title VII are hereby DISMISSED.

(7) the Board seeks dismissal of Malone's Title VII claims on the basis that it is not Malone's employer as defined in Title VII, its motion is DENIED.

(8) Defendants contend that Malone's complaint should be dismissed for failure to comply with the applicable Title VII statute of limitations and timing requirements, their motions to dismiss are DENIED.

(9) Morgan and Lovelace seek dismissal of the portions of Malone's complaint based on the Civil Rights Act of 1991, their motion is DENIED.

(10) Defendants seek a dismissal of Malone's Title VII claims on qualified immunity grounds, their motions to dismiss are DENIED.

(11) Defendants base their Motions to Dismiss Malone's complaint on the argument that the complaint fails to satisfy the "heightened specificity" pleading standard applicable to claims under Section 1983, the Motions to Dismiss are DENIED to the extent that they are based on an application of the heightened pleading standard to claims against the municipal entity.

(12) Defendants base their Motions to Dismiss Malone's complaint on the argument that the complaint fails to satisfy the "heightened specificity" pleading standard applicable to Malone's claims against individual defendants under Section 1983, the Motions to Dismiss are due to be GRANTED unless Malone amends his complaint to allege with specificity facts which establish his claim un-der 42 U.S.C. § 1983 for violation of his Fourteenth Amendment rights and which allow Defendants to ascertain whether they are entitled to qualified immunity.

Accordingly, it is further ORDERED as follows:

On or before November 21, 1994 the Plaintiff shall be allowed to file an amendment to the complaint setting forth what specific facts establish his Section 1983 claims alleging with specificity the facts which establish that certain defendants acted under color of state law and specifically what each individual did that deprived Malone of his Fourteenth Amendment rights. If Malone files such amendment Defendants will have until December 5, 1994 to plead further.

### MEMORANDUM OPINION AND ORDER ON RECONSIDERATION

#### I. INTRODUCTION

This cause is now before the court on the Motion for Reconsideration filed by defendants: Jim Ingram ("Ingram"), John Crowder ("Crowder"), Ross Dunn ("Dunn"), Doss D. Leak ("Leak"), David Eastridge ("Eastridge") and Wayne White ("White") (collectively "the Commissioners") on November 14, 1994. The Commissioners seek reconsideration of this court's Memorandum Opinion and Order of November 7, 1994, wherein the court granted in part and denied in part their Motion to Dismiss this case. For the following reasons, the Motion for Reconsideration is due to be DENIED.

On July 11, 1994, Malcolm Malone ("Malone") filed this action against the Commissioners and other defendants, under 42 U.S.C. § 1983 and 42 U.S.C. § 2000e et seq. as amended, alleging that the termination of his employment violated of his Fourteenth Amendment rights and rights secured by Title VII of the Civil Rights Act of 1964, as amended by the Civil Rights Act of 1991.

■ Ingram, Crowder, Dunn, Leak, Eastridge and White are the duly elected Commissioners of Chambers County. Malone sued each of these defendants in their official and their individual capacities. The official capacity suits against the Commissioners under Title VII are the equivalent of

a suit against the Chambers County Board of Commissioners.[1] This court's Memorandum Opinion and Order of November 7, 1994 dismissed all of Malone's Title VII claims against the Commissioners in their individual capacities. Thus, the court reads the Motion to Reconsider as an attempt to dismiss Malone's Title VII claims against the Commissioners in their official capacities.

In their Motion to Dismiss, Chambers County[2] and the Commissioners contended that dismissal of Malone's Title VII claims was appropriate for several reasons, including the failure of the Commissioners to meet the definition of an employer for purposes of Title VII. This court rejected that basis for the motion to dismiss. The Commissioners now seek reconsideration of that ruling.

## II. DISCUSSION

### 1. Standard of Review for Motion to Dismiss

Although the Commissioners do not argue that the court applied the wrong legal standard of review to their Motions to Dismiss, their arguments do necessitate a reiteration of the principles which guide a district court's decision when it rules on a motion to dismiss.

A court may dismiss a complaint **only if it is clear that no relief could be granted under any set of facts that could be proven consistent with the allegations.** See, *Hishon v. King & Spalding,* 467 U.S. 69, 73, 104 S.Ct. 2229, 2232–2233, 81 L.Ed.2d 59 (1984); *see also Wright v. Newsome,* 795 F.2d 964, 967 (11th Cir.1986) (citation omitted) ("[W]e may not … [dismiss] unless it appears beyond doubt that the plaintiff can prove no set of facts in support of the claims in the complaint that would entitle him or her to relief."). The court will accept as true all well-pleaded factual allegations and view them in a light most favorable to the non-moving party. *Hishon,* 467 U.S. at 73, 104 S.Ct. at

2232–2233. Moreover, the court is aware that the threshold that a complaint must meet to survive a motion to dismiss for failure to state a claim is "exceedingly low." *Ancata v. Prison Health Services, Inc.,* 769 F.2d 700, 703 (11th Cir.1985) (citation omitted).

### 2. Title VII Definitions of Employer and Employee

The Commissioners contends that Malone was an agent and employee of Sheriff James C. Morgan rather than an agent of the Chambers County Board of Commissioners. Consequently, they argue that Malone cannot meet the statutory definition of "employee" of the Chambers County Board of Commissioners for purposes of Title VII.

■■■ Title VII is a federal statute which provides a cause of action to certain individuals for adverse employment treatment. Malone's Title VII claims can only be viable against the Commissioners if they meet the statutory definition of employer and if he meets the statutory definition of employee.

Title VII defines an employer as a

person engaged in an industry affecting commerce who has fifteen or more employees for each working day in each of twenty or more calendar weeks in the current or preceding calendar year, and any agent of such person …

42 U.S.C. § 2000e(b). For purposes of this statute, "person" includes individuals, governments, and governmental agencies. *See,* 42 U.S.C. § 2000e(a). Title VII defines employee as "an individual employed by an employer." 42 U.S.C. § 2000e(f).

■■■ Interpretation and application of the statutory provisions of Title VII is a matter of federal, rather than state law. *Calderon v. Martin County,* 639 F.2d 271,

[1] An action against supervisory employees as agents of the employer are properly considered as made against the employer. *See, Busby v. City of Orlando,* 931 F.2d 764, 772 (11th Cir.1991).

[2] Malone's complaint and amended complaint do not name Chambers County as a defendant. In their Motion to Dismiss and subsequent plead-

ings, the Commissioners are joined in their motions by Chambers County and the Chambers County Board of Commissioners. These defendants have asserted that they are in essence one defendant. To the extent that Malone claims against the Commissioners in their official capacities, this is true.

272–73 (5th Cir. Unit B 1981).[3] A court may consider the statutory language, its legislative history, existing federal case law, and the particular circumstances of the case. *Id.* at 273.

The definition of employer under Title VII is to be construed liberally. *See, Williams v. City of Montgomery,* 742 F.2d 586, 588 (11th Cir.1984) (citation omitted). In *Williams,* the court easily found that the City of Montgomery met the definition of employer because it employed the requisite number of people and engaged in an industry affecting commerce. The City of Montgomery could not escape the Title VII definition of employer simply because it had "delegated control of some of the employer's traditional rights such as hiring or firing to a third party." *Id.* at 589. Indeed that third party, the Montgomery County–City Personnel Board, was deemed an employer as well because the delegation created an agency relationship with the City of Montgomery.

Similarly, Alabama counties and their sheriffs maintain the county jails in partnership. *Parker v. Williams,* 862 F.2d 1471, 1478–79 (11th Cir.1989). The Eleventh Circuit carefully outlined the contours of this partnership and concluded that the county has responsibility for running the county jail and the sheriff is the "ultimate repository of county authority in establishing personnel policy at the county jail." *Id.* at 1479–80 (emphasis added). A recent decision from a district court affirms that a county may be held liable for personnel decisions in the county jail. *Ryals v. Mobile County Sheriff's Dept.,* 839 F.Supp. 25, 27 (S.D.Ala.1993).

 As for the definition of employee in the Eleventh Circuit, it is to be "construed in light of the general common law concepts." *Cobb v. Sun Papers, Inc.,* 673 F.2d 337, 341 (11th Cir.1982). A court performing an analysis of a relationship to determine if the plaintiff is an employee as defined in Title VII should take into account the "economic realities of the situations." *Id.* As the Eleventh Circuit explained

it is the economic realities of the relationship viewed in light of the common law principles of agency and the right of the employer to control the employee that are determinative.

*Id.* In this same case, the Eleventh Circuit advised courts performing the analysis of this problem to examine specific facts including: method of payment of social security taxes; method of payment of salary; and responsibility for furnishing the place of work. *Id.* at 340.

Such factual determinations are inappropriate for a motion to dismiss. In deciding a motion to dismiss, the court must instead take as true the well pleaded allegations made in the complaint. In both his complaint and his amended complaint, Malone alleges that he was employed by the Chambers County Board of Commissioners and that the Chambers County Board of Commissioners employs more than fifteen people. The court cannot say that Malone has failed to allege that the Chambers County Title VII. Nor can the court determine that the Chambers County Board of Commissioners was not Malone's employer within the meaning of Title VII on the basis of the authority to which the Commissioners point without more factual information than is appropriately before the court on a motion to dismiss.

## III. CONCLUSION

To the extent that the County and the Commissioners seek dismissal of Malone's Title VII claim against them in their official capacities on the basis of an argument that they cannot meet the definition of employer under Title VII, their argument fails. Thus, their Motion for Reconsideration is due to be, and hereby is, DENIED.

Defendants are given until January 4, 1995, to file answers to the amended complaint.

**3.** In *Stein v. Reynolds Securities, Inc.,* 667 F.2d 33, 34 (11th Cir.1982), this court adopted as precedent all decisions of Unit B of the former Fifth Circuit.