Leonard Q. **ARRINGTON**, Sr., Plaintiff,

v.

Joseph **DICKERSON**, et al., Defendants.

Civil Action No. 94–D–1593–N.

United States District Court,
M.D. Alabama,
Northern Division.

Dec. 7, 1995.

Will R. Kelly, Hayneville, AL, Leonard Q. Arrington, Montgomery, AL, Thomas R. Fields, III, Hayneville, AL, for plaintiff.

Thomas C. Tankersley, Montgomery, AL, Mark Englehart, Kenneth L. Thomas, Montgomery, AL, for defendants.

## *MEMORANDUM OPINION AND ORDER*

DE MENT, District Judge.

Before the court is the defendants Joseph Dickerson, Richard Moncus, Bud Chambers, Billy M. Turner, Joe L. Reed, Mark Gilmore, Jr., Leu W. Hammonds, Alice D. Reynolds, Rick McBride, and City of Montgomery, Alabama's motion filed January 31, 1995, to dismiss the above-styled case. The plaintiff responded in opposition on October 26, 1995.

For the reasons asserted herein, the court finds that the defendants' motion to dismiss for failure to state a claim arising under the Fifth Amendment is due to be granted. The court also finds that defendants' motion to dismiss the claims against the City Council members in their official capacities on the ground of absolute immunity is due to be granted. Further, the court finds that the defendants' motion claiming that the complaint fails to state a substantive due process claim, a procedural due process claim and an equal protection claim is also due to be granted. However, the court finds that the defendants' motion claiming that the complaint fails to state a First Amendment claim against the City of Montgomery is due to be denied. Moreover, the court will reserve ruling on the qualified immunity defense until the plaintiff has responded to the issues contained in this memorandum opinion and order. As such, the court finds that the defendants' 12(b)(6) motion to dismiss the § 1983 claim alleging a violation of the First Amendment against the City Council members in their individual capacities is due to be granted without prejudice and with leave to file an amended complaint.

## STANDARD OF REVIEW FOR MOTION TO DISMISS

Pursuant to Rule 12(b)(6) of the *Federal Rules of Civil Procedure,* a defendant may move to dismiss a complaint on the ground that the plaintiff has failed to state a claim upon which relief may be granted. A Rule 12(b)(6) motion questions the legal sufficiency of a complaint; therefore, in assessing the merit of a Rule 12(b)(6) motion, the court must assume that all the factual allegations set forth in the complaint are true. *See, e.g., United States v. Gaubert,* 499 U.S. 315, 327, 111 S.Ct. 1267, 1276, 113 L.Ed.2d 335 (1991); *Powell v. Lennon,* 914 F.2d 1459, 1463 (11th Cir.1990). Moreover, all factual allegations are to be construed in the light most favorable to the plaintiff. *See e.g., Sofarelli v. Pinellas County,* 931 F.2d 718, 721 (11th Cir.1991); *see also Brower v. County of Inyo,*

489 U.S. 593, 598, 109 S.Ct. 1378, 1382, 103 L.Ed.2d 628 (1989).

On a motion to dismiss for failure to state a claim upon which relief may be granted, the movant "sustains a very high burden." [1] *Jackam v. Hospital Corp. of America Mideast, Ltd.,* 800 F.2d 1577, 1579 (11th Cir. 1986) (citing *Currie v. Cayman Resources Corp.,* 595 F.Supp. 1364, 1376 (N.D.Ga.1984)). The Court of Appeals for the Eleventh Circuit has held, "motions to dismiss for failure to state a claim should be denied unless it appears beyond doubt that the plaintiff can prove no set of facts in support of its claims." *Jackam,* 800 F.2d at 1579 (quoting *Bracewell v. Nicholson Air Servs., Inc.,* 680 F.2d 103, 104 (11th Cir.1982)); *see also Hishon v. King & Spalding,* 467 U.S. 69, 73, 104 S.Ct. 2229, 2232–33, 81 L.Ed.2d 59 (1984).

## PROCEDURAL FACTS AND HISTORY

On January 4, 1994, the plaintiff, Leonard Q. Arrington (hereafter "Mr. Arrington"), and his representative appeared before the Montgomery City Council in an attempt to gain approval for a package store license and to answer any questions from the City Council. Pl.'s Compl. at ¶ 14. Mr. Arrington's application was rejected by the City Council at this meeting on January 4, 1994. *Id.* at ¶ 15. The City Council's stated reason for the denial of the package store license was that the "Rosa Parks area does not need another package store." *Id.* at ¶ 18. In fact, there are five other stores in the immediate area of 517 Rosa L. Parks Avenue which are licensed to sell alcoholic beverages. *Id.* at ¶¶ 4–6. This area includes a State owned and operated liquor store located within fifty feet of the 517 Rosa L. Parks Avenue property. *Id.* at ¶ 5.

Notwithstanding the close proximity of these stores to Mr. Arrington's location, Mr. Arrington contends that the real reason for his denial of a retail liquor license was the City Council's decision to retaliate against him for his questioning of a City official regarding several parcels of property in Councilman Mark Gilmore's (hereafter "Mr.

---

**1.** Rule 12(b)(6) of the *Federal Rules of Civil Procedure* permits a party to plead or move for dismissal of a complaint if that complaint fails to state a claim upon which relief may be granted.

Gilmore") district.[2] *Id.* at ¶ 19. Mr. Arrington further asserts that Mr. Gilmore had predetermined that the package store license would not be issued. *Id.*

Prior to the time Mr. Arrington applied for a retail liquor license, he telephoned and wrote a letter to a City official regarding several parcels of property located in Mr. Gilmore's district which were owned by a client of Mr. Arrington. *Id.* at ¶ 9. Specifically, Mr. Arrington complained that his client allegedly had been over charged by the City for the abatement of weeds. *Id.* Sometime after the letter was sent, but prior to the telephone call and prior to Mr. Arrington's application for a retail liquor license, Mr. Gilmore called Mr. Arrington to complain of the above mentioned letter, which was forwarded to him. *Id.* at ¶ 8. In the telephone conversation, Mr. Gilmore allegedly became very belligerent and hostile. *Id.* He also stated that he was very familiar with Judges and other influential people and therefore, he would see to it that Mr. Arrington's business would be removed from Rosa L. Parks Avenue. *Id.* Subsequent to the telephone call by Mr. Arrington to the City official, Mr. Arrington received another telephone call from Mr. Gilmore, wherein Mr. Gilmore was again very hostile and stated again that he would see to it that Mr. Arrington's business at 517 Rosa L. Parks Avenue be closed. *Id.* at ¶ 10.

Thereafter, on December 21, 1993, Mr. Arrington filed an application for a retail liquor license with the City of Montgomery. *Id.* at ¶ 11. Subsequent to this application for the license, but prior to the City Council meeting, Mr. Arrington was told by the City Clerk that Mr. Gilmore had made a statement that Mr. Gilmore would "block" the issuance of a package store license for Mr. Arrington. *Id.* at ¶ 13. Following the January 4, 1994, hearing before the City Council, Mr. Arrington was told that Mr. Gilmore had solicited two people to speak against the approval of the package store. *Id.* at ¶ 17. Furthermore, again following the January 4, 1994, hearing before the City Council, Mr. Arrington spoke with the City Clerk at a local business on High Street in Montgomery, Alabama, where he was told the following by the clerk, "I told you before that your license would not be approved, because Mark Gilmore had spoke[n] with Joe Reed, Dickerson, and Hammonds and had decided to block your license." *Id.* at ¶ 16. The City Clerk also told Mr. Arrington that his application was rejected, because he had made Mr. Gilmore very angry and upset regarding another matter separate and independent of the package store application. *Id.* at ¶ 21. The Clerk went on to say that the only way that Mr. Arrington could obtain approval of a package store license was to make amends with Mr. Gilmore. *Id.*

Mr. Arrington contends that requiring him to get approval from Mr. Gilmore as a prerequisite to obtaining City Council approval for such a liquor license violates the United States Constitution. *Id.* at ¶ 22. Specifically, he contends that these procedures, or lack of consistent procedures, violate the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution. *Id.* at ¶ 23. He also asserts that the defendants have violated his First and Fifth Amendment rights.[3] Furthermore, he contends that the defendants have violated his procedural and substantive due process rights under the Fourteenth Amendment. In his response to the defendants' motion to dismiss, Mr. Arrington states that he is seeking injunctive relief against the defendants in their official capacities and damages against them in their individual capacities. He attempts to enforce these rights through 42 U.S.C. § 1983.

The defendants move the court to dismiss this action on numerous grounds. The court will separately address the following conten-

---

**2.** The court stresses that, at this juncture, it construes the allegations and factual inferences arising therefrom in the light most favorable to the plaintiff. *Sofarelli v. Pinellas County,* 931 F.2d 718, 721 (11th Cir.1991); *see also Brower v. County of Inyo,* 489 U.S. 593, 598, 109 S.Ct. 1378, 1382, 103 L.Ed.2d 628 (1989).

**3.** The court notes that the complaint fails to state any claim arising under the Fifth Amendment upon which relief may be granted, because the due process clause of the Fifth Amendment does not apply to state or local governmental actors. Therefore, Mr. Arrington's Fifth Amendment claim is without merit and does not warrant further discussion.

tions of the defendants: (1) the defendant City Council members are entitled to absolute immunity; (2) the complaint fails to state a substantive or procedural due process claim upon which relief may be granted; (3) the complaint fails to state an equal protection claim upon which relief may be granted; (4) the complaint fails to state a First Amendment claim upon which relief may be granted; and in the alternative, (5) each individual defendant is entitled to qualified immunity from damages and suit in his or her individual capacity on the ground of qualified immunity.

## DISCUSSION

### A. *Official Capacity Suit*

■ The court will first address the defendants' contention that they are entitled to absolute immunity. Defs' Mot. to Dis. at ¶ 15. The Eleventh Circuit has recognized such an immunity in favor of local legislators for conduct in furtherance of their legislative duties. *Hudgins v. City of Ashburn,* 890 F.2d 396, 406 n. 20 (11th Cir.1989); *see also Baytree of Inverrary Realty Partners v. City of Lauderhill,* 873 F.2d 1407, 1409 (11th Cir. 1989); *Espanola Way Corp. v. Meyerson,* 690 F.2d 827, 829 (11th Cir.1982), *cert. denied,* 460 U.S. 1039, 103 S.Ct. 1431, 75 L.Ed.2d 791 (1983). Also, in extrapolating precedent from the Supreme Court of the United States and the former Fifth Circuit, "the Eleventh Circuit has concluded that 'the vote of a city councilman constitutes an exercise of legislative decision-making,' which entitles such city-council member to absolute immunity since voting is a legislative function." *Hudgins,* 890 F.2d at 406 n. 20 (quoting *Meyerson,* 690 F.2d at 829). Here, the City Council members' actions consisted of voting on the application of a retail liquor license, which the court finds to be a legislative function. Therefore, the court concludes that any claims against the defendants in their official capacities are due to be dismissed. The court will next address whether Mr. Arrington has sufficiently alleged his remaining claims so as to avoid a 12(b)(6) motion to dismiss for failure to state a claim upon which relief may be granted.

### B. *Substantive and Procedural Due Process*

■ In order for Mr. Arrington to state a substantive or procedural due process claim, he must possess a protected property or liberty interest in the issuance of a retail liquor license by the City of Montgomery. The court will first address whether he has a protected property interest in said issuance of a license.

■ "Property interest are not created by the [United States] Constitution but are 'defined by existing rules or understandings that stem from an independent source such as state law' and arise only where the plaintiff demonstrates a 'legitimate claim of entitlement.'" *Polenz v. Parrott,* 883 F.2d 551, 555 (7th Cir.1989) (quoting *Board of Regents v. Roth,* 408 U.S. 564, 577, 92 S.Ct. 2701, 2709, 33 L.Ed.2d 548 (1972)). Thus, the court must look to the state statute applicable to this case. The statute governing these circumstances has been succinctly summarized by the Supreme Court of Alabama as follows:

> Section 28–3A–11 expressly provides that the governing authority of a municipality must give its consent and approval before a retail liquor license can be issued by the ABC Board if the premises sought to be licensed are located within a municipality. Further, that such requirement is within the legislature's authority to regulate traffic in liquors which power is considerably broader than the state's power to regulate a business not dealing in alcoholic beverages and a public officer exercising a quasi judicial function in granting or refusing to grant a permit or license may not be liable for damages absent a corrupt or malicious motive in the exercise of that function.

*Ott v. Everett,* 420 So.2d 258, 259–60 (Ala. 1982) (summarizing Ala.Code § 28–3A–11).[4]

---

4. Ala.Code § 28–3A–11 provides:
 Upon applicant's compliance with the provisions of this chapter and the regulations made thereunder, the board shall, where the applica-

tion is accompanied by a certificate from the clerk or proper officer setting out that the applicant has presented his application to the governing authority of the municipality, if the

Here, similar to the statute at issue in *Polenz*, § 28–3A–11 sets forth no substantive criteria under which a city "must" issue a liquor license. Consequently, Mr. Arrington has no legitimate claim of entitlement to a liquor license. *See Polenz*, 883 F.2d at 555 (similar analysis). In other words, he has no protected property interest in the issuance of a package store retail liquor license by the City of Montgomery. *See Ott v. Everett*, 420 So.2d 258, 261 (Ala.1982) (quoting *Broughton v. Alabama Alcoholic Beverage Control Bd.*, 348 So.2d 1059 (Ala.Civ.App.), *cert. denied*, 348 So.2d 1061 (Ala.1977) ("A license to engage in the sale of intoxicants is merely a privilege with no element of [a] property right. . . .")).

■ Similarly, the court finds that Mr. Arrington does not have a liberty interest in obtaining a liquor license. The Supreme Court of Alabama has held that "[a] license to engage in the sale of intoxicants is merely a privilege with no element of property right or vested interest of any kind. Selection of the beneficiaries of a mere privilege may be committed to the discretion of the body created for that purpose." *Id.* Because a license to sell liquor in Alabama is a privilege not a right, Alabama has extinguished any liberty interest. *See Polenz*, 883 F.2d at 556 (citing *Scott v. Village of Kewaskum*, 786 F.2d 338, 341 (7th Cir.1986)). As a result of the foregoing, Mr. Arrington's substantive and procedural due process claims are due to be dismissed.

## C. *Equal Protection*

■ At the outset, the court characterizes Mr. Arrington's equal protection claim as one involving the unequal administration of a facially neutral statute. "The unlawful administration by state officers of a state statute fair on its face, resulting in unequal application to those who are entitled to be treated alike, is not a denial of equal protection unless there is shown to be present in it an element of intentional or purposeful discrimination." *E & T Realty v. Strickland*, 830 F.2d 1107, 1112–13 (11th Cir.1987), *cert. denied*, 485 U.S. 961, 108 S.Ct. 1225, 99 L.Ed.2d 425 (1988) (quoting *Snowden v. Hughes*, 321 U.S. 1, 8, 64 S.Ct. 397, 401, 88 L.Ed. 497 (1944)); *see also Tasby v. Estes*, 643 F.2d 1103, 1107–08 (5th Cir.1981) (administration of student disciplinary rules and regulations);[5] *Gamza v. Aguirre*, 619 F.2d 449, 453–54 (5th Cir.1980) (misapplication of vote counting procedures). Thus, the fact that Mr. Arrington was treated differently from others will not establish an equal protection claim absent sufficient facts alleged to show that the defendants acted with discriminatory intent. *See Elston v. Talladega County Bd. of Educ.*, 997 F.2d 1394 (11th Cir.1993) (To establish equal protection violation, plaintiff must demonstrate that challenged action was motivated by an intent to discriminate.).

■ Here, the court need not even address whether the complaint contains facts which infer discriminatory intent, because the complaint does not even a hint of an allegation that Mr. Arrington was similarly situated to other liquor license applicants, yet treated more harshly by the defendants. To establish an equal protection claim, a plaintiff must show that he was treated differently from other individuals similarly situated. *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439, 105 S.Ct. 3249, 3254, 87 L.Ed.2d 313 (1985) ("The Equal Protec-

licensed premises is to be located therein, and has obtained its consent and approval, issue a retail liquor license which will authorize the licensee to purchase liquor and wine from the board or as authorized by the board and to purchase table wine, and beer, including draft or keg beer in any county or municipality in which the sale thereof is permitted, from any wholesaler licensee of the board and to sell at retail liquor and wine, dispensed from containers of any size, and beer, including draft or keg beer in any county or municipality in which the sale thereof is permitted, to patrons. A lounge licensee may permit dancing or provide other lawful entertainment on the licensed premises. No person under 19 years of age shall be admitted on the premises of any lounge liquor licensee as a patron or employee, and it shall be unlawful for any such licensee to admit any minor to the premises as a patron or employee.

5. Decisions of the former Fifth Circuit rendered prior to October 1, 1981, constitute binding authority in the Eleventh Circuit. *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir.1981) (en banc).

tion Clause of the Fourteenth Amendment commands that no State shall 'deny to any person within its jurisdiction the equal protection of the laws,' which is essentially a direction that all persons similarly situated should be treated alike."). "Equal protection does not exist in a vacuum; '[t]he Constitution does not require things which are different in fact or opinion to be treated in law as though they were the same.'" *Pollard v. City of Chicago*, 643 F.Supp. 1244, 1252 (N.D.Ill.1986) (quoting *Tigner v. Texas*, 310 U.S. 141, 145, 60 S.Ct. 879, 881, 84 L.Ed. 1124 (1940)). Thus, to survive a motion to dismiss, Mr. Arrington must first allege unequal treatment of similarly situated individuals.

Here, Mr. Arrington has failed to allege the existence of even one similarly situated person. Therefore, even assuming all allegations in the complaint as true, it is abundantly clear to the court that Mr. Arrington's equal protection claim must be dismissed pursuant to Rule 12(b)(6), as he has simply failed to allege sufficient facts to support an equal protection claim.

### D. *First Amendment*

#### 1. *Protected Speech*

██ The defendants next contend that Mr. Arrington has failed to state a claim that his First Amendment rights were violated, because he has not alleged sufficient facts to show that any activity in which he engaged is protected under the First Amendment. Defs' Mot. To Dis. at ¶ 3. Specifically, they contend that he has failed to allege sufficiently the "content, form and context [of each instance of his alleged speech], as revealed by the whole record" to demonstrate any instance of his alleged speech addressed any matter of public concern. *Id.* (quoting *Dere-*

*mo v. Watkins*, 939 F.2d 908, 910 (11th Cir. 1991) (quotation omitted)); *see also Morgan v. Ford*, 6 F.3d 750, 755 (11th Cir.1993), *cert. denied*, ___ U.S. ___, 114 S.Ct. 2708, 129 L.Ed.2d 836 (1994); *Pearson v. Macon–Bibb County Hosp. Authority*, 952 F.2d 1274, 1278–79 (11th Cir.1992). Mr. Arrington responds that his right to free speech is a matter of public concern. Pl.'s Resp. to Mot. To Dis.

The court rejects the defendants' contention that Mr. Arrington's activity is not protected by the First Amendment. Specifically, the court finds that a plausible reading of the complaint, which the court is required to construe in the light most favorable to Mr. Arrington, suggests that the letter and telephone conversation are matters of public concern. The court next will address the issues of municipal liability and qualified immunity.

#### 2. *Municipal Liability*

██ A local governing body can be sued directly under section 1983 for monetary, declaratory or injunctive relief when the alleged unconstitutional action "implements or executes a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body." *Monell v. Department of Social Servs.*, 436 U.S. 658, 690, 98 S.Ct. 2018, 2035–36, 56 L.Ed.2d 611 (1978). Furthermore, local governing bodies may be sued for constitutional deprivations emanating from "custom" although such a custom is not the product of formal adoption via the body's official decision-making regime.[6] *Id.* at 690–91, 98 S.Ct. at 2035–36.

██ However, a § 1983 plaintiff cannot rely on a theory of respondeat superior to hold a city liable for the individual actions of

---

**6.** In *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970), the Supreme Court of the United States stated:

Congress included customs and usages [in section 1983] because of the persistent and widespread discriminatory practices of state officials.... Although not authorized by written law, such practices of state officials could well be so permanent and well settled as to constitute a 'custom or usage' with the force of law. *Id.* at 167–68, 90 S.Ct. at 1613–14. As the Supreme Court has further explained,

[i]t would be a narrow conception of jurisprudence to confine the notion of 'laws' to what is found written on the statute books, and to disregard the gloss which life has written upon it. Settled state practice ... can establish what is state law.... Deeply embedded traditional ways of carrying out state policy ... are often tougher and truer law than the dead words of the written text. *Nashville C. & St. Louis R. Co. v. Browning*, 310 U.S. 362, 369, 60 S.Ct. 968, 972, 84 L.Ed. 1254 (1940).

its police officers. *Monell,* 436 U.S. at 691, 98 S.Ct. at 2036; *Hearn v. City of Gainesville,* 688 F.2d 1328, 1334 (11th Cir.1982). Neither can a municipality be held liable "solely because it employs a tortfeasor." *Busby v. City of Orlando,* 931 F.2d 764, 776 (11th Cir.1991) (quoting *Monell,* 436 U.S. at 691, 98 S.Ct. at 2036). In order to recover against a city or municipality, a plaintiff must demonstrate that the alleged constitutional deprivation occurred pursuant to a custom or policy of the municipality. *Monell,* 436 U.S. at 694, 98 S.Ct. at 2037–38; *Gilmere v. City of Atlanta,* 774 F.2d 1495, 1503 (11th Cir. 1985), *cert. denied,* 476 U.S. 1115, 106 S.Ct. 1970, 90 L.Ed.2d 654 (1986); *Hearn,* 688 F.2d at 1334. In other words, there must be a causal connection between the City of Montgomery's responsibility and Mr. Arrington's purported injuries. *Parker,* 862 F.2d at 1477 (citing *Monell,* 436 U.S. at 690, 98 S.Ct. at 2035–36).

The court recognizes that one way to establish the existence of a policy or custom sufficient to impose § 1983 liability on a municipal government is to show that the individuals, from whose actions liability arises, have final decision-making authority. *See Pembaur v. City of Cincinnati,* 475 U.S. 469, 106 S.Ct. 1292, 89 L.Ed.2d 452 (1986). The following succinctly summarizes the law concerning this area:

> At some level in [a] [c]ity's bureaucracy there must be officials whose acts reflect [c]ity policy. Because [a] [c]ity acts through its agents, municipal liability under § 1983 attaches to actions taken pursuant to the decision of a policymaker. *Reed v. Village of Shorewood,* 704 F.2d 943, 953 (7th Cir.1983). And a policymaker is one with the authority or responsibility for establishing final government action. *Pembaur v. City of Cincinnati,* [475] U.S. [469, 480–81] 106 S.Ct. 1292, 1299, 89 L.Ed.2d 452 (1986). Thus, municipal liability attaches "where—and only where—a deliberate choice to follow a course of action is made from among various alternatives by the official responsible

for establishing final policy with respect to the subject matter in question." *Id.*

*Pollard v. City of Chicago,* 643 F.Supp. 1244, 1252 (N.D.Ill.1986). The court finds that Mr. Arrington's allegations satisfy these requirements. He alleges that the City Council members have the authority to grant him a license to sell alcoholic beverages. Further, he alleges that the City Council members retaliated against him in violation of his First Amendment rights. Thus, if the City Council members do in fact have final decision-making authority concerning licenses to sell alcoholic beverages, then Mr. Arrington has sufficiently pleaded a complaint against the City of Montgomery for a violation of his First Amendment rights.

In *City of St. Louis v. Praprotnik,* 485 U.S. 112, 108 S.Ct. 915, 99 L.Ed.2d 107 (1988), a plurality of the Supreme Court of the United States concluded that the determination of whether a person has final decision-making authority in a particular area is a question of state law for the judge to decide, not a question of fact for the jury to resolve. *Id.* at 123, 108 S.Ct. at 924. Thereafter, in *Jett v. Dallas Independent School District,* 491 U.S. 701, 109 S.Ct. 2702, 105 L.Ed.2d 598 (1989), a majority of the Supreme Court endorsed the *Praprotnik* position and held that the determination of who has final decision-making authority is to be based on state law. *Id.* at 737–38, 109 S.Ct. at 2723–24. Therefore, the court must look to state law to determine whether the City Council members do have final decision-making authority.

The court finds that the City Council members are the final-decision making authority in determining whether to grant a license to sell alcoholic beverages. Specifically, the court finds that there is no review of the City Council's decisions. Furthermore, Ala.Code § 28–3A–11 provides that the Alabama Alcoholic Beverage Control Board *shall* issue a retail liquor license upon approval of the governing authority of the municipality and compliance with the Alcoholic Beverage Licensing Code.[7] Thus, once the City Council

---

7. Ala.Code § 28–3A–11 provides in pertinent part:

Upon applicant's compliance with the provisions of this chapter and the regulations made thereunder, the board shall, where the applica-

approves an application for a liquor license, the board has no discretion to not abide by the City Council's decision. In other words, if the City Council denies an application, such as in this case, the board cannot issue a license.

 Moreover, the courts finds it noteworthy to mention that notice pleading is sufficient for § 1983 suits against local governments.[8] *Leatherman v. Tarrant County Narcotics Intelligence and Coordination Unit*, 507 U.S. 163, 113 S.Ct. 1160, 122 L.Ed.2d 517 (1993). It is abundantly clear to the court that the complaint satisfies the notice pleading requirement. For instance, the complaint states that the alleged unconstitutional actions "were undertaken pursuant to [the defendant City Council members'] official law and policymaking roles for the City of Montgomery and constitute municipal policy and action by the Defendant City of Montgomery. Similarly, the 'procedures', hereinbefore referred to constitute municipal policy and action by the Defendant City of Montgomery." Pl.'s Compl. at ¶ 27. Thus, the defendants' motion to dismiss on Mr. Arrington's § 1983 claim alleging a violation of the First Amendment against the City is due to be denied.

3. *Individual Liability and Qualified Immunity*

The defendants contend that § 1983 claims require heightened pleading and that Mr. Arrington has failed to so plead. Hence, the defendants move the court pursuant to Rule 12(b)(6) of the *Federal Rules of Civil Proce-dure* to dismiss the § 1983 claims. In the alternative, the defendants assert that each City Council member is entitled to qualified immunity for personal liability. At this stage of the litigation, the court's analysis of the defendants' Rule 12(b)(6) motion and qualified immunity defense become so intertwined that the Eleventh Circuit has not explicitly held which one courts should address first.[9] *See Wooten v. Campbell*, 49 F.3d 696, 699 n. 3 (11th Cir.1995), *cert. denied*, ── U.S. ──, 116 S.Ct. 379, 133 L.Ed.2d 302 (1995). The court in *Wooten* did suggest, however, that the threshold issue for the court is whether under Rule 12(b)(6), "a plaintiff establishes the violation of a constitutional right." *Id.*

*a. Requirement of Heightened Pleading*

 Generally, as previously mentioned, to state a claim for relief, the *Federal Rules of Civil Procedure* impose minimal pleading standards and require only "a short and plain statement showing that the pleader is entitled to relief." Fed.R.Civ.P. 8(a)(2). The purpose of Rule 8 "notice pleading" is to provide a "defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." *Conley v. Gibson*, 355 U.S. 41, 47, 78 S.Ct. 99, 103, 2 L.Ed.2d 80 (1957).

 In support of the requirement that a more stringent pleading standard is required to state a claim under § 1983, the court relies on *Fullman v. Graddick*, 739 F.2d 553 (11th Cir.1984). In *Fullman*, the Eleventh Circuit stated that in civil rights actions, courts have dismissed a complaint "as insufficient where the allegations it contains are vague and

---

tion is accompanied by a certificate from the clerk or proper officer setting out that the applicant has presented his application to the governing authority of the municipality, if the licensed premises is to be located therein, and has obtained its consent and approval, issue a retail liquor license. . . .

8. Notice pleading requires only "a short and plain statement showing that the pleader is entitled to relief." Fed.R.Civ.P. 8(a)(2).

9. In *Wooten*, the Eleventh Circuit stated as follows:

Under Rule 12(b)(6), the defendants can defeat [the plaintiff's] cause of action if her complaint fails "to state a claim upon which relief can be granted." Fed.R.Civ.P. 12(b)(6). Under the qualified immunity defense, the defendants are immune from liability if [the plaintiff's] complaint fails to state a violation of a "clearly established statutory or constitutional right[ ] of which a reasonable person would have known." *See Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982). As the Supreme Court states, "[a] necessary concomitant to the determination of whether the constitutional right asserted by a plaintiff is 'clearly established' at the time the defendant acted is the determination of whether the plaintiff has asserted a violation of a constitutional right at all." *Siegert v. Gilley*, 500 U.S. 226, 232, 111 S.Ct. 1789, 1793, 114 L.Ed.2d 277 (1991).

*Id.* at 699 (ellipses supplied).

conclusory." *Id.* at 556–57 (citations omitted).

In a subsequent decision, the Eleventh Circuit expressly held that in all complaints where liability is predicated upon § 1983, "some factual detail is necessary" and that this "heightened Rule 8 requirement—as the law of the circuit—must be applied by the district courts." *Oladeinde v. City of Birmingham,* 963 F.2d 1481, 1485 (11th Cir. 1992), *cert. denied sub nom. Deutcsh v. Oladeinde,* 507·U.S. 987, 113 S.Ct. 1586, 123 L.Ed.2d 153 (1993). The Eleventh Circuit explained that " 'in an effort to eliminate nonmeritorious claims on the pleadings and to protect public officials from protracted litigation involving specious claims, we, and other courts, have tightened the application of Rule 8 to § 1983 claims.' " *Id.* (quoting *Arnold v. Board of Educ. of Escambia County,* 880 F.2d 305, 309 (11th Cir.1989)).

 Pleading with specificity is particularly important where, as here, a defendant asserts the defense of qualified immunity, and the court must decide whether the conduct complained of violates a "clearly established" constitutional or federal statutory right.[10] *Id.; see also Wicks v. Mississippi State Employment Servs.,* 41 F.3d 991, 995 (5th Cir.), *cert denied,* —— U.S. ——, 115 S.Ct. 2555, 132 L.Ed.2d 809 (1995). Less than a year after *Oladeinde* was decided, however, the Supreme Court of the United States held that in a § 1983 lawsuit alleging municipal liability, the Court of Appeals for the Fifth Circuit erred in requiring the plaintiff to plead specific factual allegations demonstrating a deprivation of federal rights:

> We think that it is impossible to square the 'heightened pleading standard' applied by the Fifth Circuit in this case with the

liberal system of 'notice pleading' set up by the Federal Rules. Rule 8(a)(2) requires that a complaint include only 'a short and plain statement of the claim showing that the pleader is entitled to relief.'

*Leatherman v. Tarrant County Narcotics Intelligence & Coordination Unit,* 507 U.S. 163, 167–68, 113 S.Ct. 1160, 1163, 122 L.Ed.2d 517 (1993).

Nonetheless, the holding in *Leatherman* is not controlling in this case nor does it offer much guidance, since the Supreme Court expressly refrained from deciding whether "qualified immunity jurisprudence would require a heightened pleading in cases involving individual government officials." 507 U.S. at 167, 113 S.Ct. at 1162; *see also Malone v. Chambers County Bd. of Comm'rs.,* 875 F.Supp. 773, 790 (M.D.Ala. 1994) (Albritton, J.) (finding that the holding in *Leatherman* did not repeal the heightened pleading standard in § 1983 actions where a defendant official is entitled to assert the defense of qualified immunity). The Supreme Court reasoned that "unlike various government officials, municipalities do not enjoy immunity from suit—either absolute or qualified—under § 1983." *Leatherman,* 507 U.S. at 166, 113 S.Ct. at 1162.

In the absence of Supreme Court precedent, as here, trial courts are bound by the holdings of the circuit courts of appeal in their respective circuits. Hence, the court agrees with the reasoning in *Malone:* Undoubtedly, "*Leatherman* calls into question the validity of imposing a heightened pleading standard in any § 1983 case. However, absent further direction from the Supreme Court or the Eleventh Circuit, the court will apply the heightened standard where appropriate under current Eleventh Circuit law."

---

**10.** A § 1983 litigant must overcome an onerous burden to defeat the defense of qualified immunity and recover monetary damages from the pocket of a government official. The purpose of qualified immunity is to shield government officials performing discretionary functions from civil trials and liability if their conduct does not violate " 'clearly established statutory or constitutional rights of which a reasonable person would have known.' " *Lassiter v. Alabama A & M Univ.,* 28 F.3d 1146, 1149 (11th Cir.1994) (quoting *Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982)).

At the same time, qualified immunity also protects defendant officials from other burdens associated with litigation, such as discovery. *Lassiter,* 28 F.3d at 1149. *See Marx v. Gumbinner,* 855 F.2d 783, 787 (11th Cir.1988); *see also Elliott v. Perez,* 751 F.2d 1472, 1478 (5th Cir.1985) ("subjecting officials to trial, traditional discovery, or both concerning acts for which they are likely immune undercuts the protection from governmental disruption which official immunity is purposed to afford").

875 F.Supp. at 790. Accordingly, the court finds that as to the § 1983 claims asserted against the defendant City Council members in their individual capacities, Mr. Arrington is subject to a heightened pleading standard.

The court also finds persuasive the Seventh Circuit's reasoning that "[a] civil rights complaint must outline a violation of the constitution or a federal statute and connect the violation to the 'named defendants.'" *Caldwell v. City of Elwood*, 959 F.2d 670, 672 (7th Cir.1992) (quoting *Brownlee v. Conine*, 957 F.2d 353, 354 (7th Cir.1992)); *see also Branch v. Tunnell*, 937 F.2d 1382, 1386 (9th Cir.1991), *cert. denied*, —— U.S. ——, 114 S.Ct. 2704, 129 L.Ed.2d 832 (1994) (Where subjective intent is an element of a plaintiff's claim, "bare allegations of improper purpose are insufficient to subject government officials to discovery and the related burdens of defending a lawsuit."); *Harlow v. Fitzgerald*, 457 U.S. 800, 817–18, 102 S.Ct. 2727, 2737–38, 73 L.Ed.2d 396 (1982) ("bare allegations of malice" are insufficient to subject government officials either to the costs of trial or the burdens of discovery). Accordingly, Mr. Arrington must state nonconclusory allegations setting forth specific evidence of the unlawful intent of each City Council member.

### b. Analysis

■ To state a claim for relief, § 1983 litigants have the burden of alleging two elements with some factual detail: "(1) that they suffered a deprivation of 'rights, privileges or immunities secured by the Constitution and laws' of the United States," and (2) that a person "acting under color of law" caused the deprivation, either by an act or omission. *Wideman v. Shallowford Community Hosp., Inc.*, 826 F.2d 1030, 1032 (11th Cir.1987) (citation omitted).

■ The court finds that Mr. Arrington has satisfactorily pleaded that the defendant City Council members acted under color of state law. Although he has not specifically alleged that they acted as such, the court believes that the actions of the defendant City Council members in voting on the issuance of a retail liquor license at a City Council meeting clearly is an action under color of state law. Moreover, the court finds that the complaint shows that the alleged unlawful conduct occurred while the defendant City Council members were acting under the authority of their office as officials of the City of Montgomery. *See Flagg Bros., Inc. v. Brooks*, 436 U.S. 149, 149 n. 5, 98 S.Ct. 1729, 1734 n. 5, 56 L.Ed.2d 185 (1978) (pronouncing that a state employee acts under color of law when he or she exercises his employment responsibilities, regardless of whether "the actions . . . were officially authorized, or lawful").

■ The court, however, cannot find that Mr. Arrington has fulfilled the heightened pleading requirement in alleging deprivations of his underlying First Amendment rights. Here, Mr. Arrington seeks to hold the defendant City Council members individually liable for voting to deny him a liquor license, because he allegedly sent a letter to a City official and Mr. Gilmore. The court recognizes that where subjective intent, such as intent to retaliate on the basis of the exercise of protected speech, is an element of a plaintiff's claim, "bare allegations of improper purpose are insufficient to subject government officials to discovery and the related burdens of defending a lawsuit." *Branch*, 937 F.2d at 1386; *see also Harlow v. Fitzgerald*, 457 U.S. 800, 817–18, 102 S.Ct. 2727, 2737–38, 73 L.Ed.2d 396 (1982) ("bare allegations of malice" are insufficient to subject government officials either to the costs of trial or the burdens of discovery). Therefore, Mr. Arrington must state nonconclusory allegations setting forth specific evidence of each of the City Council member's unlawful intent. *See, e.g., Branch v. Tunnell*, 14 F.3d 449, 452 (9th Cir.), *cert. denied*, —— U.S. ——, 114 S.Ct. 2704, 129 L.Ed.2d 832 (1994); *Branch*, 937 F.2d at 1386; *Schultea v. Wood*, 27 F.3d 1112, 1115 n. 2 (5th Cir.1994); *Moore v. Agency for International Dev.*, 994 F.2d 874, 877 (D.C.Cir.1993). The court believes that Mr. Arrington has not set forth nonconclusory allegations providing specific evidence of the unlawful intent of each of the City Council members, and in fact, the complaint suggests that his license was denied for a valid reason—already too many stores located in the area licensed to sell alcoholic beverages.

Furthermore, after several readings of the nine-page complaint, the court is unsure of how any of the City Council members other than Mr. Gilmore, fit into the scheme of alleged liability under § 1983, as the allegations asserted in the complaint do not even mention that these members knew of the letter to Mr. Gilmore or knew of the letter to a City official. In fact, in order to bridge the gap between Mr. Arrington's speech and his denial of a license by the City Council, the court has to assume facts not in the complaint. Specifically, the court has to assume that Mr. Gilmore told the other City Council members about his conversation with Mr. Arrington and the letter. As such, the facts are not specific enough to allow the court to determine the validity (or not) of a qualified immunity defense. In fact, the court stresses that there is an absence of any causal connection between Mr. Arrington's speech and the defendants' retaliatory conduct. In other words, the complaint fails to sufficiently connect any violation with the named defendants. There are not even any facts from which to conclude that the City Council members were motivated to deny the liquor license because of Mr. Arrington's protected activity. The court again notes that the complaint even sets forth a legitimate reason for denying the license—at least five other stores licensed to sell alcoholic beverages existed in the area.

Moreover, in response to the motion to dismiss, Mr. Arrington simply states that his rights "to free speech, not to be retaliated against, to enjoy equal protection of the law, and to enjoy due process of the law" were clearly established. Clearly, this identification of the constitutional rights allegedly violated is at such a high level of generality that it fails to adequately allow the court to decide the issue of qualified immunity. In addition, Mr. Arrington fails to cite a controlling case, decided before the events at issue, which finds a constitutional violation on materially similar facts.[11] *See Pickens v. Hollowell,* 59 F.3d 1203, 1206 (11th Cir.1995); *Rogers v. Miller,* 57 F.3d 986, 989 (11th Cir.1995) (dis-

cussing qualified immunity in regards to public employees' First Amendment freedoms).

Acknowledging Mr. Arrington's vague response to the motion to dismiss, the court finds that he has failed to meet the burden of heightened pleading required in § 1983 actions, and furthermore, the court finds that he has failed to state facts sufficient to allege a causal connection between protected activity under the First Amendment and any adverse action by the defendants.

As such, the facts are not specific enough to allow the court to determine the validity (or not) of a qualified immunity defense. The court finds, however, that the just remedy in these circumstances is to grant leave to amend rather than to dismiss the § 1983 claim alleging a First Amendment violation.

Specifically, the court directs Mr. Arrington to allege with specificity all the material facts on which he bases his claim that the defendants violated his First Amendment rights. He should state the specific provision of the First Amendment which has been abridged and state *with specificity* how each defendant acted in violation of said provision. Mr. Arrington also should allege *detailed* facts as to why the defense of qualified immunity cannot be sustained in this action. *See Elliott v. Perez,* 751 F.2d 1472, 1482 (5th Cir.1985); *see also Wicks v. Mississippi State Employment Servs.,* 41 F.3d 991, 995 (5th Cir.), *cert. denied,* —— U.S. ——, 115 S.Ct. 2555, 132 L.Ed.2d 809 (1995) (requiring a § 1983 litigant "to allege the particular facts forming the basis of his claim, including those preventing [the plaintiff] from successfully maintaining a qualified immunity defense"). He should include a controlling case or cases from the Supreme Court of the United States and/or the Eleventh Circuit Court of Appeals showing that the alleged First Amendment violation by each City Council member was clearly established at the time of the challenged action. *See D'Aguanno v. Gallagher,* 50 F.3d 877, 881 n. 6 (11th Cir.1995); *Courson v. McMillian,* 939 F.2d 1479, 1498 n. 32 (11th Cir.1991).

11. The court cautions Mr. Arrington that whether applicable law was clearly established at the time of the challenged action is determined by reference to decisions of the Supreme Court of the United States and the Eleventh Circuit Court of Appeals. *See D'Aguanno v. Gallagher,* 50 F.3d 877, 881 n. 6 (11th Cir.1995); *Courson v. McMillian,* 939 F.2d 1479, 1498 n. 32 (11th Cir.1991).

The plaintiff is forewarned that if only conclusory allegations are provided, the court will be compelled to grant the defendants' 12(b)(6) motion to dismiss for failure to state a violation of his First Amendment rights.[12]

The court finds it noteworthy to mention that although the foregoing "heightened pleading" discussion has focused on the First Amendment, the court believes that all of Mr. Arrington's claims fail to meet the "heightened pleading requirements" applicable to § 1983 actions against government officials in their individual capacities. However, the foregoing discussions were dispositive of these other claims, and therefore, Mr. Arrington is not required to plead them with specificity as required of his First Amendment claim.

## CONCLUSION

For the foregoing reasons, it is CONSIDERED and ORDERED:

(1) that the defendants' motion claiming that the complaint fails to state a claim arising under the Fifth Amendment be and the same is hereby GRANTED;

(2) that the defendants' motion claiming that the complaint fails to state a substantive due process claim, procedural due process claim and equal protection claim is hereby GRANTED;

(3) that the defendants' motion asserting that as to the claims against the defendant City Council members in their official capacities, they are entitled to absolute immunity be and the same is hereby GRANTED;

(4) that the defendants' motion claiming that the complaint fails to state a First Amendment claim against the City of Montgomery be and the same is hereby DENIED;

(5) that the defendants' motion to dismiss for failure to state a First Amendment claim for relief under § 1983 against the City Council members in their individual capacities be and the same is hereby GRANTED without prejudice and with leave to the plaintiff to file on or before December 15, 1995 an amended complaint in conformity with this memorandum opinion and order;

(6) that the court will reserve ruling on the qualified immunity defense until the plaintiff has had an opportunity to respond to the issues contained herein;

(7) that the plaintiff show cause on or before December 15, 1995 why each defendant City Council member in his or her individual capacity is not entitled to qualified immunity as to the First Amendment claim seeking relief under § 1983 and that the plaintiff must provide the court with authority in support thereof.

---

12. The court notes that the foregoing heightened pleading analysis pertains only to the defendants mentioned herein in their *individual capacities.* Suits against an individual in his official capacity are actions against the entity the individual represents. *Parker v. Williams,* 862 F.2d 1471, 1476 n. 4 (11th Cir.1989). Official capacity suits is but another way of bringing an action against an entity of which an officer is an agent, and a victory against a named individual in an official capacity suit is a victory against the entity that employs him. *Hobbs v. Roberts,* 999 F.2d 1526,

1530 (11th Cir.1993) (citing *Kentucky v. Graham,* 473 U.S. 159, 167–68, 105 S.Ct. 3099, 3105–07, 87 L.Ed.2d 114 (1985)). Furthermore, it is long established that governmental entities are not entitled to qualified immunity in § 1983 claims. *Owen v. City of Independence,* 445 U.S. 622, 638, 100 S.Ct. 1398, 1409, 63 L.Ed.2d 673 (1980); *see Will v. Michigan Dep't of State Police,* 491 U.S. 58, 71, 109 S.Ct. 2304, 2312, 105 L.Ed.2d 45 (1989) (holding that states and state officials acting in their official capacities are not "persons" subject to § 1983 liability).